UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION FILE NO. 1:09-CV-884

| | | |
|---|---|---|
| CELTIC INSURANCE COMPANY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT** |
| TRESSA D. FOX, | ) ) | |
| Defendant. | ) ) ) | |

Plaintiff Celtic Life Insurance Company ("Celtic") complaining of Defendant, Tressa D. Fox ("Ms. Fox"), says and alleges:

1. Celtic is a corporation organized and existing under the laws of the State of Illinois, and is duly licensed and authorized to engage in insurance business in the State of North Carolina. Celtic's principal place of business is in Chicago, Illinois.

2. Defendant is a citizen and resident of Randolph County, North Carolina.

3. The amount in controversy in this action, exclusive of interest and costs, exceeds $75,000.00, and Plaintiff and Defendant are citizens of different states. Accordingly, this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(a)(1), and venue is proper in this District where Defendant resides.

4. A genuine and actual controversy exists between the parties such that this Court is authorized to issue a declaratory judgment regarding the rights of the parties.

## **FACTUAL BACKGROUND**

5. On the afternoon of May 28, 2009, Ms. Fox executed and delivered electronically an application ("the Application") to Celtic, requesting that Celtic issue a health insurance policy providing coverage to her. A true and accurate copy of the Application, printed from its electronic format, and with personal information redacted, is attached hereto and incorporated as Exhibit A.

6. The Application requests specific information about the health history and condition of the proposed insured. It provides, in the section entitled "HEALTH QUESTIONS":

> For this insurance to be issued, the answers to the following health questions must be true, complete and accurately recorded. All health information must be provided in Section 3 of this application, and Celtic Insurance Company must approve this application. No one may change this requirement in any way. If any information on any form is misstated or omitted, coverage may later be rescinded. Rescission voids coverage from the effective date, and any premiums already paid will be refunded, minus any claims already paid. No payments will be made for any claim submitted, whether or not the treatment was related to the condition that was omitted or misstated....

7. Ms. Fox answered "No" to each subsection of question 3, entitled "Specific Health Questions." By doing so, she affirmatively represented that she had not:

> Within the last 10 years, . . . ever been treated for, had symptoms of, or been advised or counseled that they have or may have had:
> …
> b. Blood disorder
> …
> d. Cancer

>   …
>   q. Emotional, psychological, psychiatric or nervous condition or disorder.

8. Ms. Fox answered "No" to each subsection of question 4a, entitled "Recent Medical Treatment." By doing so, she affirmatively represented that she had not, "[w]ithin the past 24 months . . . undergone or been advised or recommended for . . . Lab work or tests."

9. Ms. Fox also answered "No" to question 4b, inquiring whether "you . . . [are] scheduled for or awaiting the results of any tests, biopsies, procedures or lab work."

10. In response to question 7, Ms. Fox disclosed that she had "had a physical exam and/or diagnostic testing within the last 24 months," and further represented that such exam was on May 1, 2009, and that "all results of the physical exam and diagnostic testing" were "normal."

11. To supplement her response to question 2(d), regarding prescription drugs, Ms. Fox disclosed that she had been treated by Dr. West in Asheboro for a "sore mouth" and that the condition was no longer present. To supplement her response to question 7(a), she stated that the recent physical exam and diagnostic testing were performed by Dr. "Kaplain" of Greensboro, North Carolina, and that they were "normal."

12. Ms. Fox submitted the completed application electronically to Celtic on the afternoon of May 28, 2009, after signing her name electronically. Immediately above her signature, the Application states:

> **1. TRUE AND COMPLETE:** My answers to the questions on this application and any additional information I have

3

provided are true and complete and accurately recorded. I understand that under no circumstances is a producer or company representative allowed to permit me to answer any question inaccurately or untruthfully and I represent that such did not occur.

13. Believing in and relying upon the truth of each of the statements and representations made by Ms. Fox in the Application, Celtic issued to Ms. Fox its health insurance certificate no. C758977279 ("the Policy"), providing health coverage to Ms. Fox, to become effective on June 1, 2009.

14. On or about June 5, 2009, Ms. Fox was seen by oncologist Donald S. Murinson, M.D., after referral to him by Richard D. Kaplan, M.D. The referral was based upon an examination by Dr. Kaplan on May 20, 2009, and blood tests on May 20, 2009, and May 28, 2009, indicating a possible diagnosis of acute leukemia. This diagnosis was confirmed, and Ms. Fox was immediately treated for her disease, resulting in the submission of charges to Celtic from a number of providers.

15. In the course of its investigation of claims relating to this treatment, Celtic learned from available records that the medical history set out in the Application, as alleged in paragraphs 7, 8, 9, 10 and 11 above, was incomplete, misleading and false, in that:

    a. Ms. Fox consulted with Dr. Kaplan on May 20, 2009, complaining of sores on her arms, easy bruising, bumps under the skin on her face and pain in the hip and right side. Following his examination, Dr. Kaplan ordered a

4

        blood test to be performed that day, and the results of that test were highly abnormal.

    b.    Ms. Fox was advised that additional blood testing was necessary, and on the afternoon of May 28, 2009, approximately two hours after the Application was submitted, Ms. Fox underwent additional scheduled testing at Dr. Kaplan's office, as a follow-up to the earlier abnormal results on May 20, 2009. Those results were also highly abnormal, potentially indicative of acute leukemia.

    c.    Ms. Fox had complained to Dr. Kaplan on December 11, 2008 and in early 2009 of depressive symptoms, and at her request, he prescribed Paxil, and later renewed the prescription.

16.    Ms. Fox's representations to Celtic in the Application, as set forth in paragraphs 7, 8, 9, 10 and 11 above, were material to Celtic's decision to issue the Policy. Ms. Fox's misrepresentative responses affected the acceptance of the risk and/or the hazard assumed by Celtic in issuing the Policy.

17.    If Ms. Fox, in answer to the questions alleged in paragraphs 7, 8, 9, 10 and 11 above, had accurately and completely stated the true facts regarding complaints of depressive symptoms and treatment, the complaints made to Dr. Kaplan on May 20, 2009, abnormal blood test on May 20, 2009, and follow-up test scheduled for that very afternoon, Celtic would not have issued the Policy as applied for.

5

18.     By letter dated September 25, 2009, Celtic advised Ms. Fox of its intent to rescind the Policy, and explained the basis for that decision. Celtic requested a response, including any further information she wished to offer.

19.     An attorney representing Ms. Fox contacted Celtic, in response to the September 25, 2009 letter, and requested that Celtic reverse its decision, contending that the coverage was valid because "she had not been diagnosed with any condition" at the time of the Application. He requested additional time to appeal Celtic's decision, and Celtic agreed to extend the time to appeal its decision until November 16, 2009. Neither Ms. Fox nor her attorney has submitted anything further to Celtic.

20.     By letter dated November 17, 2009, Celtic has advised Ms. Fox that its decision to rescind is final, and that it will return all premiums paid by her, totaling $1,752.72, by separate letter.

## COUNT I - RESCISSION

21.     Celtic realleges the allegations in paragraphs 1 through 20 of the Complaint.

22.     Because of material misrepresentations in the Application regarding Ms. Fox's health, Celtic is entitled to a declaration that the Policy is null and void *ab initio*, and that Celtic has no liability on any past, pending or future claim under the Policy.

## COUNT II – FRAUDULENT MISREPRESENTATION

23.     Celtic realleges the allegations in paragraph 1 through 20 of the Complaint.

24. On information and belief, Ms. Fox knowingly, deliberately, intentionally and willfully misrepresented, or otherwise omitted, concealed, and failed to disclose, relevant material facts at the time she completed the Application, thus causing the Application to be false and otherwise misleading.

25. On information and belief, Ms. Fox made the misrepresentations concerning her health history with the intent to induce Celtic to rely on such representations in order to obtain the Policy.

26. Ms. Fox knew and intended, or should have known, that Celtic would rely on the facts set forth in the Application in deciding whether to issue the Policy.

27. Celtic relied to its detriment on Ms. Fox's representations in the Application, and Celtic's reliance was reasonable. The misrepresentations concerning Ms. Fox's health history affected Celtic's acceptance of the risks and/or the hazard assumed.

28. By failing to respond accurately to questions about her health, Ms. Fox knowingly, willfully and intentionally deceived Celtic, and Celtic has been damaged by such conduct so that the Policy may deemed null and void *ab initio*.

## COUNT III –ALTERNATIVE DECLARATORY RELIEF

29. Celtic incorporates by reference the allegations in paragraphs 1 through 20 of the Complaint.

30. The Application states, in pertinent part, immediately above the signature of Ms. Fox:

> **2. PRE-EXISTING CONDITIONS:** I understand that eligible expenses for pre-existing conditions may be limited.

31. Section V of the Policy, entitled "Exclusions and Limitations," provides:

> Charges *incurred* for the following are not *eligible expenses*:
>
> Pre-Existing Conditions Limitation
>
> A *Pre-Existing Condition* is a condition for which medical advice, diagnosis, care or treatment was received or recommended within the 12 months immediately preceding the effective date of the *insured person's* coverage.
>
> *Benefits* are paid for an *insured person's pre-existing conditions* once coverage is in force for 12 continuous months after the effective date.
>
> Any pre-existing medical conditions not disclosed on the application form may result in rescission of coverage. Rescission means that coverage is void from the effective date.
>
> Any treatment or services for an excluded *pre-existing condition,* including any *complications* or conditions resulting from treatment of a *pre-existing condition* are not *eligible expenses.*

32. If Celtic is not entitled to rescind the Policy, on the grounds of material misrepresentation and fraudulent misrepresentation, as it has alleged in Counts I and II, alternatively Celtic is entitled to a declaration that it has no obligation under the Policy to pay any expenses incurred as a result of cancer treatment received by Ms. Fox during the first 12 months of coverage, because her cancer is a pre-existing condition under the Policy for which there is no coverage for the first 12 months.

8

WHEREFORE, Plaintiff prays the Court as follows:

1. That it declare Celtic's health policy C758977279 to be null and void *ab initio*, with the premiums to be refunded to Ms. Fox.

2. Alternatively, that it declare that all expenses incurred by Ms. Fox for cancer-related treatment from June 1, 2009 through May 31, 2010 relate to a pre-existing condition, which is not covered by the Policy.

3. That the costs of this action be taxed against Defendant; and

4. That the Court grant such other and further relief as it deems just and proper.

This 17th day of November, 2009.

/s/ Erna A. P. Womble
ERNA A.P. WOMBLE
NC State Bar No. 13651
Email: ewomble@wcsr.com

/s/ George K. Evans, Jr.
GEORGE K. EVANS, JR.
NC State Bar No. 5140
Email: gevans@wcsr.com
Attorneys for Plaintiff

OF COUNSEL:

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
One West Fourth Street
Winston-Salem, North Carolina  27101
Telephone:  (336) 721-3723